Robert LYTLE, Appellee,

v.

**COMMISSIONERS OF ELECTION OF UNION COUNTY et al., Appellants.**

No. 75–1327.

United States Court of Appeals, Fourth Circuit.

Argued Nov. 12, 1975.

Decided Feb. 10, 1976.

John L. Choate, Asst. Atty. Gen. of S. C., Columbia, S. C. (Daniel R. McLeod, Atty. Gen. of S. C., C. Tolbert Goolsby, Jr., Deputy Atty. Gen., Karen LeCraft Henderson, Asst. Atty. Gen. of S. C., Columbia, S. C., Bruce W. White, Union County Atty., Union, S. C., on brief), for appellants.

Amand Derfner, Charleston, S. C., and David Ross Clarke, Milford, S. C., for appellee.

Before WINTER, CRAVEN and WIDENER, Circuit Judges.

CRAVEN, Circuit Judge:

This is an appeal by the Commissioners of Election of Union County from an award of attorney's fees to counsel for Lytle. We affirm.

I.

In March 1974 Appellee Robert Lytle brought suit under 42 U.S.C. § 1983 against the Commissioners of Election of Union County, South Carolina, in their official capacities alleging generally that residency requirements for election to the Township Commission[1] violated the fourteenth amendment by diluting the power of his vote. He sought declaratory and injunctive relief against the future operation of that system of representation.

In May 1974 the district court entered summary judgment for Lytle, finding that while elections were at large for the entire eight-member Commission, the requirement that each commissioner reside in a separate township violated the fourteenth amendment because of the substantial inequality in population of these townships. Judge Blatt enjoined the Election Commissioners from holding any further elections for the Commission under these residency requirements and ordered that the primary and general elections in 1974 be conducted with all candidates running at-large on a county-wide basis.

Hearing the case on expedited appeal, we affirmed the holding of the district court that the residency requirements of the election plan in Union County were unconstitutional.[2] We read *Dusch v. Davis,* 387 U.S. 112, 87 S.Ct. 1554, 18 L.Ed.2d 656 (1967), as meaning that while residency requirements may be constitutionally permissible as part of a rational system of local government, the system was constitutionally deficient where the plan would allow a "minority in numbers . . . to control the governing board . . .."[3] 509 F.2d at 1052. However, finding that the interim relief ordered by the district court was unnecessarily extensive, we reversed on that issue and remanded with the direction that a plan be developed which incorporated the election of some members from specific geographical areas and others as "floaters" without any residency requirements.[4] On

---

1. The Board of Township Commissioners and the County Supervisor constitute the governing body of Union County.

2. *Lytle v. Commissioners of Election,* 509 F.2d 1049 (4th Cir. 1974).

3. One of the county's eight districts contained 58 percent of its total population. 509 F.2d at 1052.

4. Of critical importance to this case, no petition for *certiorari* was filed in the *Lytle* case. A petition for *certiorari* was filed in *McCain v. Lyland,* Lytle's companion case, and was denied. 419 U.S. 1032, 95 S.Ct. 515, 42 L.Ed.2d 308 (1974).

remand the district court ordered implementation of a plan with five members of the Commission elected with residency requirements and three without any such requirements.

In August 1974 Lytle filed a motion for attorney's fees. A hearing was held on the motion in September, and in January 1975 Judge Blatt entered an order awarding attorney's fees in the amount of $5,000. It is from this award that the instant appeal is taken.

## II.

The district court granted attorney's fees on alternative grounds: the private attorney general and the common benefit theories, although he specifically stated in his order that he felt the former theory was "more applicable" to the facts of this case. What was a relatively simple question at the time is now complex because the law has changed.

■ On May 12, 1975, the Supreme Court handed down its opinion in *Alyeska Pipeline Service Co. v. Wilderness Society*, 421 U.S. 240, 95 S.Ct. 1612, 44 L.Ed.2d 141 (1975). That case specifically destroyed the power of a district court to award attorney's fees under the private attorney general theory. Furthermore, the Court's discussion of the proper application of the common benefit theory clearly indicated that it is inappropriate for the case at hand. *Id.* at 264 n.39, 95 S.Ct. 1612. The Court specifically recognized that it was for the Congress to select, by statutory authorization, those types of actions in which attorney's fees should be awarded.

And Congress acted on August 6, 1975, adding § 14(e) as an amendment to the Voting Rights Act. That section[5] provides as follows:

(e) In any action or proceeding to enforce the voting guarantees of the fourteenth or fifteenth amendment, the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs.

Then came *Dallas County v. Reese*, 421 U.S. 477, 95 S.Ct. 1706, 44 L.Ed.2d 312 (1975), decided on May 19, 1975. *Dallas County* held that the fact a majority of a governing board may be elected from residential districts comprising a minority of the entire unit's population, *without more,* does not establish a constitutional violation. The Court nevertheless recognized that such claims may establish a constitutional violation, but in order to do so, they "must be based on findings in a particular case that a plan in fact operates impermissibly to dilute the voting strength of an identifiable element of the voting population." *Id.* at 480, 95 S.Ct. at 1708. *See also, Vollin v. Kimbel,* 519 F.2d 790 (4th Cir. 1975).

## III.

■ In *Bradley v. Richmond School Board*, 416 U.S. 696, 94 S.Ct. 2006, 40 L.Ed.2d 476 (1974), the Supreme Court held that on direct appeal "a court is to apply the law in effect at the time it renders its decision, unless doing so would result in manifest injustice or there is statutory direction or legislative history to the contrary." *Id.* at 711, 94 S.Ct. at 2016. We readily agree with the Commissioners' argument that judicial opinions as well as statutory developments are included within the "law in effect" concept. *See id.* at 715, 94 S.Ct. 2006.

The Commissioners concede that in a proper case the district courts are authorized by § 14(e) of the 1975 Voting Rights Act amendments to award counsel fees. But they urge this is not such a case and that on its peculiar facts and because of *Dallas County, supra,* Lytle is not entitled to receive the benefit of the statute. We disagree.

■ The Commissioners argue first that Lytle is not the prevailing party even before *Dallas County*. They contend that, since all residency requirements were not abolished and since modifications of the

5. 42 U.S.C. § 1973*l*(e).

plan could be made either by the legislature or the district court, Lytle did not prevail below. The district court, in considering the issue of attorney's fees, concluded that Lytle had prevailed. We find that while all residency requirements were not abolished under the terms of the circuit court's opinion, Lytle did establish in that suit that the system in operation violated the Constitution and won relief appropriate, in the opinion of this court, to remedy that constitutional infirmity.[6]

■ Even after *Dallas County*,[7] Lytle remains the prevailing party. Since the Commissioners did not seek review in the Supreme Court, our decision became the law of the case.[8]

■ We reject the Commissioners' contention that, under *Dallas County's* explication of the meaning of the Constitution, Lytle's suit is not "an action to enforce any voting guarantees of the fourteenth amendment" and, therefore, does not come within the terms of the 1975 legislation.[9]

*Dallas County* held that, without more, residency requirements of the type in effect in Union County did not violate the four-

teenth amendment. That case, as noted above, recognized that a constitutional violation is established where it is shown that the "plan in fact operates impermissibly to dilute the voting strength of an identifiable element of the voting population." 421 U.S. at 480, 95 S.Ct. at 1708.

This case was decided in favor of Lytle on motion for summary judgment. The court made no finding as to the invidious effect of the plan's operation in Union County because prior to *Dallas County* such a finding would have been superfluous. For reasons already expressed, we need not go back and retry the case. For Lytle to prevail, all we need determine is whether this was an action to enforce the voting guarantees of the fourteenth amendment. It is enough that under the theory of Lytle's complaint such a showing might have been made had his motion for summary judgment been denied.

Lytle specifically alleged that the system operated to dilute his voting strength in violation of the fourteenth amendment. Furthermore, Lytle's affidavit, which was before the court when it considered the motion for summary judgment, specifically

6. Commissioners' contention that to be the "prevailing party" Lytle must win on all issues is clearly without merit. "Although a plaintiff may not sustain his entire claim, if judgment is rendered for him he is the prevailing party." 6 J. Moore, Federal Practice ¶ 54.70[4], at 1306–07 & n.3 (2d ed. 1975). *Accord*, 10 C. Wright & A. Miller, Federal Practice and Procedure: Civil § 2667, at 129 & n.8 (1971). *See, e. g., K–2 Ski Co. v. Head Ski Co.*, 506 F.2d 471, 477 (9th Cir. 1974); *Lewis v. Pennington*, 400 F.2d 806, 820 (6th Cir.), *cert. denied*, 393 U.S. 983, 89 S.Ct. 450, 21 L.Ed.2d 444 (1968); *Sperry Rand Corp. v. A–T–O, Inc.*, 58 F.R.D. 132, 135 (E.D.Va. 1973). (All the authorities cited above discuss the "prevailing party" concept in the context of Fed.R.Civ.P. 54. We believe that same analysis is applicable to the term as used in the statute.)

7. In construing the term "prevailing party," the Commissioners would have us presume that when Congress enacts legislation it is aware of all existing law and on that basis would have us hold that under *Dallas County* Lytle could not come within the intended meaning of that term. If we are to assume so much, we might with equal validity presume that Congress was also aware of the Commissioners' failure to petition for *certiorari* and recognized that un-

der the law of the case concept Lytle was the prevailing party.

.

8. *See, e. g., D. C. Federation of Civic Ass'ns v. Volpe*, 148 U.S.App.D.C. 207, 459 F.2d 1231, 1267–68 (1971), *cert. denied*, 405 U.S. 1030, 92 S.Ct. 1290, 31 L.Ed.2d 489 (1972). *Cf. Stonega Coke & Coal Co. v. Price*, 116 F.2d 618, 621 (4th Cir. 1940).

We also note that *Bradley, supra*, recognized specifically a distinction between application of subsequent legal developments to a case on direct appeal, concluding the new developments were clearly applicable, from consideration on collateral attack, as here, where the Court suggested there was no absolute rule of application. 416 U.S. at 710–11, 94 S.Ct. 2006. Since we conclude, *infra*, that even if *Dallas County* is applied the Commissioners do not prevail, we need not decide the issue left open by the Supreme Court in *Bradley*.

9. While we conclude on independent grounds that the Commissioners' argument here is without merit, we believe the law of the case rationale, set out in the text, *supra*, is a sufficient basis for decision.

contends "that other Commissioners [outside Union Township, which contains over 50 percent of the county's population] have primarily represented the interests of their respective townships . . . ." This is precisely the type of allegation which *Dallas County* recognized would establish a constitutional violation if accepted as true: " 'If a borough's resident on the council represented in fact only the borough, . . . different conclusions might follow.' " 421 U.S. at 480, 95 S.Ct. at 1708 (quoting from *Dusch v. Davis, supra*). We, therefore, conclude that Lytle's action does in fact come within the terms of § 14(e) of the 1975 amendments to the Voting Rights Act.

■ The Commissioners further urge that in any case attorney's fees should not be awarded since they come within the exception mentioned in *Bradley, supra*, that legal developments during appeal should not be applied where they would cause "manifest injustice." 416 U.S. at 711, 94 S.Ct. 2006. We view this argument as wholly without merit. All of the reasons advanced by Mr. Justice Blackmun in *Bradley* for refusing the benefit of the exception to the school board apply equally here.

Finally, the Commissioners argue that they are immune from suit under the eleventh amendment and that they may not be sued under 42 U.S.C. § 1983 since in their official capacities they are not persons within the meaning of that statute.

■ As the district court found, this suit is against county and not state officials[10] and any award will be satisfied from Union County's treasury. App. 56. It has been established for almost a century that under these circumstances counties and *a fortiori* county officials are not protected from suit by the eleventh amendment.[11] *Lincoln County v. Luning*, 133 U.S. 529, 10 S.Ct. 363, 33 L.Ed. 766 (1890). *See Edelman v. Jordan*, 415 U.S. 651, 667 n.12, 94 S.Ct. 1347, 39 L.Ed.2d 662 (1974); *Burt v. Board of Trustees*, 521 F.2d 1201, 1205 & n.5 (4th Cir. 1975).

■ The Commissioners' argument that in their official capacities they are not "persons" within the meaning of 42 U.S.C. § 1983 is similarly without merit. We have held otherwise. *Burt, supra* at 1205; *Thomas v. Ward*, 529 F.2d 916 (4th Cir. 1975) (citing *Burt*).

## IV.

■ Section 14(e) of the 1975 amendments to the Voting Rights Act provides that the award of attorney's fees under this statute is to be made in the "discretion" of the district court. The Commissioners would have us remand for exercise of that discretion.

We have carefully examined the decision of the district judge awarding attorney's fees and the transcript of the hearing when the matter was under consideration. It is clear that the district court unequivocally exercised its discretion in favor of an award of attorney's fees. Judge Blatt expressed his high regard for the legal work done by Lytle's counsel in this case and stated: "If I can find legal authority to award attorney's fees, I want to do that." App. 35. We hold that legal authority does exist. That it derives from an act of Congress rather than judge-made law would seem to make no

---

10. The Commissioners admit, as they must, that they are not state officials. Brief for appellants at 26.

11. The legislative history of the 1975 amendments may be read to intend a limitation of the eleventh amendment's application in this area, rendering the amendment's protections unavailable even to states. *See* 1975 U.S.Code Cong. & Ad.News p. 1492. If such a result were intended, and we have no occasion to reach that issue in this case, the efficacy of congressional action would appear to depend on its authority under the fourteenth amendment and specifically Congress' power under the fifth section of that amendment to enforce its guarantees against the states. *See* Note, *Attorneys' Fees and the Eleventh Amendment*, 88 Harv.L.Rev. 1875, 1897–1902 (1975); Comment, *Federal Powers and the Eleventh Amendment: Attorneys' Fees in Private Suits Against the State*, 63 Calif.L.Rev. 1167, 1206 n.189 (1975).

difference in the exercise of discretion, and we decline to require a further hearing.[12]

AFFIRMED.

WIDENER, Circuit Judge (concurring):

I concur in the result reached in the majority opinion for the reasons set forth just below.

In the instant case, the merits of the dispute were not appealed and, as such, that judgment is final. This being so, I am of opinion the Supreme Court's decision in *Bradley v. Richmond School Board*, 416 U.S. 696, 94 S.Ct. 2006, 40 L.Ed.2d 476 (1974), is controlling. There, the Court had before it the question of the propriety of an award of attorneys' fees under a statute authorizing such an award adopted during the pendency of an action seeking to recover such fees. As stated by the Court:

"The question, properly viewed, then, is not simply one relating to the propriety of retroactive application of [the statute allowing attorneys' fees] to services rendered prior to its enactment, but rather, one relating to the applicability of that section to a situation where the propriety of a fee award was pending resolution on appeal when the statute became law." 416 U.S. at 710, 94 S.Ct. at 2015.

Barring any manifest injustice or statutory directive to the contrary, the Court concluded that "a court is to apply the law in effect at the time it renders its decision." 416 U.S. at 711, 94 S.Ct. at 2016. Thus, although the district court's ruling on the merits of the matter now before us may have been erroneous at the time it was rendered, its reconsideration is closed to us, and I am of opinion we are bound by *Bradley* to apply § 14(e), 42 U.S.C. § 1973*l*(e), of the 1975 Voting Rights Act amendments so as to sustain the award of attorneys' fees.

Since *Ex parte Young*, 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714 (1907), affirmative relief has been available to require public officials to perform their duties in a consti-tutional manner. That being true, and since it has previously been decided in *Lincoln County* that counties are not immune from suit under the Eleventh Amendment, the only other reasoning (than *Bradley*) necessary to support the decision reached here is § 14(e), 42 U.S.C. § 1973*l*(e), of the Voting Rights Act, which specifically allows attorneys' fees to the prevailing party in "any action" to enforce the voting guarantees involved here.

With this in mind, although I am not in accord with many or all of the statements made in the majority opinion, I do not think a dissent would add anything to the case, especially because they are dicta. But I should not leave the subject without noting my particular disagreement with the suggestion in the opinion that Congress may limit the application of the Eleventh Amendment. It is for the courts, not Congress, to say how the Constitution should apply. *Marbury v. Madison*, 1 Cranch 137, 177, 2 L.Ed. 60 (1803).

---

12. Judge Blatt also carefully exercised his discretion with respect to amount, arriving at the $5,000 award. He reduced the figure submitted by Lytle's attorneys by more than 60 percent because he believed it proper to act conservatively when dealing with the disbursement of public funds.