Jo Ann MILLER, Lucille Napier, Harold Eugene "Buddy" Nelson and Muriel Jean Dalton, Plaintiffs,

v.

BOARD OF EDUCATION OF the COUNTY OF LINCOLN, a corporation, Larry M. Wilkerson, Superintendent, as an Individual and in his official capacity, Donald R. Mullins, President, as an Individual and in his official capacity, Billy Joe Smith, member, as an Individual and in his official capacity, and Hurxel Woodall, member, as an Individual and in his official capacity, Defendants.

Linzy HONAKER, Delfee Odean Smith, Danny Adkins and Marcus Thompson, Plaintiffs,

v.

BOARD OF EDUCATION OF the COUNTY OF LINCOLN et al., Defendants.

Mauna Lee HONAKER, Plaintiff,

v.

BOARD OF EDUCATION OF the COUNTY OF LINCOLN et al., Defendants.

Civ. A. Nos. 76–0336–H, 76–0377–H and 76–0404–H.

United States District Court, S. D. West Virginia. Huntington Division.

April 14, 1978.

108

John J. McOwen, Huntington, W. Va., J. David Cecil, Leonard B. Knee, Charleston, W. Va., Joseph G. Martorella, Huntington, W. Va., for plaintiffs.

Rudolph L. DiTrapano, DiTrapano, Mitchell, Lawson & Field, Charleston, W. Va., for defendants.

## MEMORANDUM OPINION AND ORDER

HADEN, District Judge.

The above styled civil actions invoke the federal question and civil rights jurisdiction of this Court. 28 U.S.C. § 1331 and § 1343. Each complaint alleged that the named Plaintiffs were either transferred, demoted or terminated in their employment with the Lincoln County Board of Education as a result of their exercise of rights secured to them by the First and Fourteenth Amendments in violation of §§ 1983, 1985, 1986

and 1988 of Title 42, United States Code. All three civil actions were consolidated and advanced for trial after commencement of hearings on the several applications for preliminary injunctions.

This Court having considered the testimony and evidence taken at all the hearings, the briefs, arguments and proposals of counsel, does hereby make the following findings of fact and conclusions of law:

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

All Plaintiffs, prior to May 1, 1976, were employed by the Lincoln County Board of Education as tenured or untenured school service personnel.

The Board of Education of Lincoln County is a corporation existing under the laws of the State of West Virginia. The Defendants, Donald R. Mullins, Billy Joe Smith and Hurxel Woodall were and are members of the Board of Education of Lincoln County, and the Defendant, Larry M. Wilkerson, was the Superintendent of Schools for the Board of Education of Lincoln County during the times relevant to this action.

During the May, 1976 primary election, Defendant Hurxel Woodall ran for reelection as a member of the nonpartisan Board of Education of Lincoln County. In this election, Mr. Woodall was opposed by Herbert Brumfield. Mr. Woodall was successful.

## I. THE CLAIMS

■ As is quite often the case in actions for the redress of the deprivation of constitutional rights, the major conflict lies not in the determination of applicable law, but rather in the determination of the facts. The law, applicable to the merits of this case is clear: A non-policy making, non-confidential government employee may not be discharged from a job that he or she is satisfactorily performing upon the sole ground of his political beliefs or activities. *Elrod v. Burns,* 427 U.S. 347, 96 S.Ct. 2673, 49 L.Ed.2d 547 (1976). In a case such as this the burden is on the Plaintiffs to demonstrate by a preponderance of the evidence that their conduct was constitutionally protected and that such conduct was a "substantial" or "motivating" factor in the Board's decision to transfer or not rehire the Plaintiffs. Once this burden is carried, then the burden shifts to the Board to demonstrate by a preponderance of the evidence that it would have reached the same decision in the absence of the protected conduct. *Mt. Healthy City Board of Education v. Doyle,* 429 U.S. 274, 97 S.Ct. 568, 50 L.Ed.2d 471 (1977). Accordingly, the crux of this matter is whether the Plaintiffs have sustained their burden of demonstrating that the "motivating factor" in their termination or transfer and demotion was their exercise of their First Amendment rights.

■ The Plaintiffs rely on the fact that the Board failed to include in their notice of termination or transfer and demotion any reason for the action it was taking, allegedly in contravention of Regulation 5300 of the State Board of Education. Even assuming, *arguendo,* this to be true, this Court finds that the failure to give a reason was in good faith reliance upon the direct advice of legal counsel to the effect that the Superintendent should *never* give a reason for the nonrenewal of a nontenured employee. Accordingly, this general discharge procedure will not be considered as evidence that political reprisal was a "motivating factor" in the Board's decision.

■ Plaintiffs have attempted to demonstrate the existence of a pattern of political motivations based primarily on evidence that such was the practice of prior Boards and superintendents.[1] While such evidence may raise the suspicion of political discrimination, its probative value is insufficient to

---

1. In this regard, Plaintiffs attempted to qualify Kenneth Legg as an expert witness to describe the political nature of the employment practices of the Lincoln County Board of Education as compared to other West Virginia County Boards of Education. This Court does not believe that Mr. Legg's background, experience, or education is sufficient to qualify him as an expert witness in this area, and disregards the testimony that he presented on this point.

establish by a preponderance of the evidence pattern and practice discriminatory action by Defendants against Plaintiffs for the exercise of protected conduct.[2] Rather, each case must be examined individually to determine whether the termination or transfer was due to political reprisal:

## JO ANN MILLER

■ Mrs. Miller who was employed under a continuing contract, was transferred and demoted from her position as principal at Pleasant View School to the position of teacher at Midkiff Elementary.

She testified that although her support of Herbert Brumfield, Woodall's opponent, was not open, that of her husband was. She also testified that she was under coercion from Donald Payton and from Defendant Woodall to support Woodall in the election.

The Defendants countered with evidence that Mrs. Miller was an incapable and inefficient principal. There was testimony that Mrs. Miller's husband was constantly at the school and his presence constituted a disruptive influence. Additionally, there was evidence that Mrs. Miller, without authorization, sold snack food and t-shirts from her office, that she used the school building for a baby shower and that a multitude of bus drivers loitered around Mrs. Miller's office for no purpose which could be characterized as employee related activities. In addition, Paul Wilson, a salesman for a school supplies company, testified to the travails he suffered in trying to collect his payment, and was forced to go to the central administration of the school board to secure payment, which he ultimately received from Mrs. Miller's successor.

It is the finding of this Court that Mrs. Miller has failed to establish by a preponderance of the evidence that her transfer was due to political considerations. Accordingly, the Defendant must prevail on this claim.

## LUCILLE NAPIER

■ Mrs. Napier was employed in a non-tenured position as a bus driver for the Board of Education. Her contract was not renewed for the 1976–77 school year.

Mrs. Napier testified that she had received no threats or coercion from anyone. Although her husband campaigned for Woodall's opponent, they had no bumper stickers on their cars or signs in their yard indicating vocal support for Brumfield, and she did not actively support either candidate. She stated that Mr. Woodall must have known that they were not supporting him because her neighbor saw Mr. Woodall's opponent at their house. These circumstances are too attenuated to impute knowledge to Woodall or his supporters on the Board of Mrs. Napier's alleged political activities.

The defense presented evidence that Mrs. Napier had failed to make a school bus run to Camden Park on May 19, 1976. There was later testimony that she had a valid excuse although it was not presented until subsequent to her failure to make the run. The trip had to be cancelled due to her failure to appear for work. Jack Lovejoy, the principal of the school she served, had made complaints to the Superintendent about her performance. There was additional evidence that she took turns with other employees making school bus runs. The Transportation Supervisor, Glasgow Stollings, testified that Mrs. Napier was not dependable and refused to take orders or to fill out monthly reports. He also stated that her maintenance record was poor and that it was reported to the Superintendent's Office.

It is the finding of this Court that Mrs. Napier has failed to prove by a preponderance of the evidence that her termination was due to political considerations. Accordingly, the Defendants must prevail on this claim.

**2.** The Court also notes that the usual five person board of education in West Virginia school districts is selected for six year terms on a staggered basis every biennium. As is the case with most public bodies selected by the political process, board policies, proper or otherwise, change as the composition of the board changes.

## HAROLD EUGENE "BUDDY" NELSON

■ Mr. Nelson was employed by the Lincoln County Board of Education as an untenured bus driver. His contract was not renewed for the 1976–77 school year.

Mr. Nelson testified that he talked to Defendant Woodall in his office and told him that he would not support him in the 1976 primary. There is no evidence of Mr. Nelson's being threatened or coerced to change his vote. Mr. Nelson admits to having three accidents during the previous school year and a fourth accident the year before that. Two of these major accidents occurred during the month of October, 1975.

Robert Peyton, Mr. Nelson's step-father, told Mr. Woodall and Glasgow Stollings that his step-son was working too many hours and was unable to stay awake while driving his bus. Mr. Wilkerson testified that Glasgow Stollings frequently complained to him about Mr. Nelson's work performance.

It is the finding of this Court that Mr. Nelson has failed to establish by a preponderance of the evidence that his termination was due to political consideration. It is the further finding of this Court that even had Nelson proven his termination to be due to political considerations, this Court finds that the Defendants have demonstrated by a preponderance of the evidence that they could have reached the same decision in the absence of the exercise of protected conduct. Accordingly, the Defendants must prevail on this claim.

## MURIEL JEAN DALTON

■ Mrs. Dalton, who is a tenured employee of the School Board, was transferred from the Atenville School to Fez School. At her request, she has been transferred more recently to Ferrellsberg School. She testified that she did not believe her husband supported any particular candidate. She also stated that she had no conversation with anyone concerning the election and that no one ever asked her to support Woodall. She concludes that there could be no other reason for her transfer other than political.

Her husband testified that he "worked for" Herbert Brumfield, but that no one ever asked him to support Woodall.

It is the finding of this Court that Mrs. Dalton has failed to prove by a preponderance of the evidence that the Defendants knew or had reason to know of her political beliefs, and that she has failed to prove by a preponderance of the evidence that her transfer was in any manner due to political considerations. Accordingly, the Defendants must prevail on this claim.

## ARTHUR LINZY HONAKER

■ Arthur Linzy Honaker was employed by the Lincoln County Board of Education as an untenured "lubrication boy". His contract was not renewed for the 1976–77 school year.

Although Mr. Honaker had no conversations with any of the members of the Board, his father, Linuel Honaker, who was the Board's head mechanic, conversed with Defendants Smith and Mullins prior to the primary. At that time Smith asked Linuel to support Woodall, or if he could not support Woodall, not to campaign for anyone. On that occasion, Linuel Honaker was told that no matter whom he supported, his son and son-in-law would keep their jobs. After the primary election and after Linzy Honaker and Danny Adkins were not retained, Linuel Honaker called Mr. Mullins and questioned him concerning the promise that his son and son-in-law would keep their jobs. Mr. Mullins responded that the "promise" would have been valid only if he had "stayed-out" of the campaign.

Superintendent Wilkerson testified that Linzy Honaker was not rehired since his service was not satisfactory. Other witnesses, Tom Frye and Glasgow Stollings, testified that the Honakers sold excess school property for salvage, stole gasoline, performed mechanical work on privately-owned automobiles in the Board's garage, permitted unauthorized visitors at the garage, and that Linzy was a frequent absentee from his job.

While this Court does not discount the evidence that the Honakers may have worked on non-Board cars, or may have stolen gasoline, it is of the opinion and finds that the primary motivating factor behind Linzy Honaker's nonrenewal was the exercise of his father's First Amendment rights. This Court further finds that the Board would not have reached the same decision in the absence of exercise of protected conduct. Accordingly, Plaintiff Arthur Linzy Honaker prevails on his claim against the Defendants.

## DELFEE ODEAN SMITH

■ Mr. Smith was employed by the Lincoln County Board of Education as an untenured bus driver. His contract was not renewed for the 1976–77 school year.

Mr. Smith testified that he had a conversation with Defendant Woodall at the bus garage in which Woodall pressured him to support his candidacy. He further testified that although he did not work in the primary election, he had a bumper sticker on his car for Woodall's opponent two or three weeks before the primary election. He testified that he was not approached by any other members of the School Board.

Superintendent Wilkerson testified that Smith was not rehired due to many complaints concerning his failure to maintain discipline on his bus, including allowing students to smoke. The Superintendent further testified that prior to becoming Superintendent he was the principal at Duval High School, the school which Smith served as a bus driver. He said that during that period he had become familiar with Mr. Smith's inability to maintain discipline on his bus. Glasgow Stollings also testified that he had received numerous complaints concerning Smith's inability to control the students.

It is the finding of this Court that the Plaintiff has failed to prove by a preponderance of the evidence that political considerations were a motivating factor in his nonrenewal. Accordingly, the Defendants must prevail on this claim.

## DANNY ADKINS

■ Mr. Adkins was employed by the Lincoln County Board of Education as an untenured bus driver. His contract was not renewed for the 1976–77 school year.

Mr. Adkins testified that he had talked to Mr. Woodall and informed him that he would not support him in the forthcoming election. In addition, Mr. Adkins is the son-in-law of Linuel Honaker, whose conversations with members of the Board were recounted, *supra*.

Superintendent Wilkerson testified that Mr. Adkins was not renewed due to an unsatisfactory work record. In addition, Glasgow Stollings testified that Linuel Honaker had complained of Mr. Adkins speeding and driving in a reckless manner. Mr. Stollings also testified that he had complaints from parents concerning Mr. Adkins' handling of the bus.

It is the finding of this Court that Mr. Adkins has demonstrated by a preponderance of the evidence that his nonrenewal was motivated by political considerations. It is further the finding of this Court that although the Defendants have advanced some justification for the nonrenewal, the Board has failed to demonstrate by a preponderance of the evidence that it would have reached the same decision in the absence of the exercise of protected conduct. Accordingly, the Plaintiff Danny Adkins prevails on his claim.

## MARCUS E. THOMPSON

■ Mr. Thompson was employed by the Lincoln County Board of Education as an untenured bus driver. His contract was not renewed for the 1976–77 school year.

Mr. Thompson testified that he never told anyone whom he supported or voted for in the primary election. He had no signs, never attended any political meetings nor made any political contributions. Mr. Woodall did not talk to him or ask him to support him. On recall, however, Mr. Thompson testified that the candidate he supported was made known to the commu-

nity. On cross examination, he testified that he might have told only his family whom he supported. Mr. Thompson further testified that he was under a 50% disability due to stomach problems.

Mr. Wilkerson testified that Mr. Thompson's nonrenewal was due to his 50% physical disability. Mr. Wilkerson testified that the Department of Public Safety would not certify a bus driver who was under a disability of that magnitude.

It is the finding of this Court that the Plaintiff, Marcus E. Thompson, has failed to demonstrate by a preponderance of the evidence either that his termination was due to political reasons or that the Defendants had any knowledge of his political inclinations. Further, this Court finds that even if Mr. Thompson had demonstrated that political considerations were a motivating factor in his nonrenewal, the Board has demonstrated by a preponderance of the evidence that it would have reached the same decision in the absence of the protected conduct. Accordingly, the Defendants must prevail on this claim.

## MAUNA LEE HONAKER

■ Mrs. Honaker was employed by the Lincoln County Board of Education as an untenured cook. Her contract was not renewed for the 1976–77 school year.

Although Mrs. Honaker did not have any conversations with the Defendants, her husband, Collie Honaker, had conversations with Defendants, Woodall, Mullins and Smith concerning the primary election. He stated that although when he talked to Woodall he did not say who he supported, Woodall knew that this meant that he supported another candidate. He also stated that he told Defendant Mullins that he would not support Woodall. After his wife's termination, Mr. Honaker called Defendant Mullins and was told by him that Mrs. Honaker was not rehired since he did not support Woodall as instructed. Mr. Honaker further testified that he had talked to people about the election and gave out political cards.

Defendant Mullins admitted that he talked to Mr. Honaker about the election and that Mr. Honaker told him he would support Mr. Woodall. He also admitted the later call, but denied giving him a reason for the nonrenewal.

Superintendent Wilkerson testified that the reason for the nonrenewal was trouble with the efficiency at her school and the high food costs. Mr. Wilkerson further testified that Mrs. Honaker's principal had informed him that there were problems with the hot lunch program at her school. However, he admitted that she did not tell him that there was anything wrong with Mrs. Honaker's performance. The Superintendent made no visits to the school concerning Mrs. Honaker and had no conversations with members of the School Board concerning Mrs. Honaker. Mr. Wilkerson further testified that the hot lunch program was not, in any respect, under Mrs. Honaker's control. He testified that parents were upset with the hot lunch program, but none had complained of Mrs. Honaker's performance.

It is the finding of this Court that the Plaintiff, Mauna Lee Honaker, has demonstrated by a preponderance of the evidence that her nonrenewal was motivated by political considerations. Accordingly, Plaintiff Mauna Lee Honaker prevails on her claim.

## II. THE REMEDIES

This Court, having determined who has prevailed on the substantive claims, must now determine against whom and in what manner relief is to be afforded.

The Plaintiffs have sued under two different jurisdictional statutes, 28 U.S.C. § 1343(3) and 28 U.S.C. § 1331 seeking both equitable relief and money damages.

The first jurisdictional statute, 28 U.S.C. § 1343(3) provides the jurisdictional basis for an action under 42 U.S.C. § 1983. Inasmuch as the Board of Education of Lincoln County is not a "person" within the meaning of 42 U.S.C. § 1983, no relief may be awarded against the Board under this statute. *Cox v. Stanton,* 529 F.2d 47 (4th Cir.

1975); *Burt v. Board of Trustees,* 521 F.2d 1201 (4th Cir. 1975); *Singleton v. Vance County Board of Education,* 501 F.2d 429 (4th Cir. 1974). Of course, under 42 U.S.C. § 1983, relief may be afforded against the Superintendent and Members of the Board both in their individual and official capacities. *Owen v. City of Independence,* 560 F.2d 925 (8th Cir. 1977); *Burt v. Board of Trustees, supra.*

■ Plaintiffs have also alleged a cause of action directly under the Fourteenth Amendment through the federal question jurisdiction of this Court, 28 U.S.C. § 1331. This Court, finding that the jurisdictional prerequisites of 28 U.S.C. § 1331 have been met, may award relief against the Board of Education, the Superintendent and the members of the Board under this theory. *Owens v. City of Independence,* 560 F.2d 925 (8th Cir. 1977); *Cox v. Stanton,* 529 F.2d 47 (4th Cir. 1975); *Brault v. Town of Milton,* 527 F.2d 730 (2nd Cir. 1975); *Singleton v. Vance County Board of Education,* 501 F.2d 429 (4th Cir. 1974). *See also City of Kenosha v. Bruno,* 412 U.S. 507, 93 S.Ct. 2222, 37 L.Ed.2d 109 (1973); *Bivens v. Six Unknown Named Agents,* 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971).

■ Inasmuch as both parties demanded a jury trial in this action, this Court may only grant permanent equitable relief in this action. Since injunctive relief may be awarded against the individual Defendants only in their official capacities, *Burt v. Board of Trustees, supra,* no relief may be awarded at this time against the individual Defendants in their individual capacities. As the Court in *Burt* stated:

"Since the named defendants possessed the power to reinstate and cause disbursement of back pay from public funds only in their *official* capacities as *trustees,* any judgment, to be consistent with the initial characterization as "equitable" must necessarily run against defendants as officials. Private citizens are not empowered to reinstate or order back pay

out of school board or county funds." 521 F.2d at 1204.

■ Accordingly, this Court will grant the following equitable relief against the Board of Education under 28 U.S.C. § 1331 and against the named members of the Board and the Superintendent in their official capacities under both 28 U.S.C. § 1331 and § 1343(3): The prevailing Plaintiffs are to be reinstated to their former positions with the Board of Education within a reasonable period, not to exceed sixty days from the date of entry of this Order. The prevailing Plaintiffs are to be awarded back pay from the date of their termination until the date of reinstatement. The amount of back pay awarded shall be such as will compensate the prevailing Plaintiffs for any net [3] pecuniary loss they may have sustained as a result of their illegal termination. *Thomas v. Ward,* 529 F.2d 916 (4th Cir. 1975). This amount will include any increases in salary and any pension rights, medical or health insurance benefits, or other fringe benefits which would have accrued to the benefit of the prevailing Plaintiffs had they not been illegally terminated.

■ This back pay award is to be paid from the funds of the Board of Education of Lincoln County. Such an award does not violate the restrictions of the Eleventh Amendment. "While the actions of counties and other subdivisions of a state generally constitute 'state action' for purposes of the fourteenth amendment, a county or other state subdivision 'is not necessarily a state defendant for purposes of the Eleventh Amendment.'" *Burt v. Board of Trustees,* 521 F.2d 1201 (4th Cir. 1975), *quoting from Edelman v. Jordan,* 415 U.S. 651, 667 n. 12, 94 S.Ct. 1347, 39 L.Ed.2d 662 (1974). This rule was more recently articulated in *Lytle v. Commissioners of Elections,* 541 F.2d 421 (4th Cir. 1976), wherein the Court stated:

"As the district court found, this suit is against county and not state officials and

---

**3.** Although the testimony of the prevailing Plaintiffs is uncontroverted on their inability to secure other employment prior to hearing, evidence concerning the issue of mitigation of damages was not developed, fully, at trial.

any award will be satisfied from Union County's treasury. . . . It has been established for almost a century that under these circumstances counties and *a fortiori* county officials are not protected from suit by the eleventh amendment." 541 F.2d at 426 *citing Lincoln County v. Luning,* 133 U.S. 529, 10 S.Ct. 363, 33 L.Ed. 766 (1890).

Likewise, the Defendants are not protected by their protestations that their actions were taken in good faith. First of all, the Court finds that the terminations of the prevailing Plaintiffs could in no way be characterized as being in good faith. Even if they were, however, while the good faith defense may preclude a damage award, it is not a defense to the exaction of back pay incident to equitable relief. *Wood v. Strickland,* 420 U.S. 308, 95 S.Ct. 992, 43 L.Ed.2d 214 (1975); *Owens v. City of Independence,* 560 F.2d 925, 940 (8th Cir. 1977).

Inasmuch as the parties are entitled to seek a jury trial on the several claims for damages from the alleged violation of the Fourteenth Amendment and 42 U.S.C. § 1983 rights, none may be fixed by the Court in this aspect of the proceeding, which sounds wholly in equity. See *Burt v. Board of Trustees,* 521 F.2d 1201 (4th Cir. 1975). The Plaintiffs shall inform this Court whether they desire to go to trial on their damage claims within thirty days of the entry of this Order.[4]

---

4. The Court directs counsel to the very recent decision of *Carey v. Piphus,* 435 U.S. 247, 98 S.Ct. 1042, 54 L.Ed.2d 252 (1978) which addresses the problem of proving damages in § 1983 cases in favor of those whose rights to procedural due process, admittedly have been violated.