**Donald AKERS, et al., Plaintiffs,**

v.

**Gaston CAPERTON, et al., Defendants.**

**Civ. A. No. 2:90–1152.**

United States District Court,
S.D. West Virginia,
Charleston Division.

July 30, 1992.

Clinton W. Smith, Charleston, W.Va., for Akers.

William C. Garrett, Gassaway, W.Va., for Cayton, Hanlin, Richardson, Engelke and Pauley.

David L. Shuman, Charles E. Bailey, Kenneth Knopf and Jon L. Brown, Shuman, Annand & Poe, Charleston, W.Va., for defendants.

## MEMORANDUM OPINION AND ORDER

HADEN, Chief Judge.

Pending are cross motions for summary judgment. The Court partially grants the motions for summary judgment and ORDERS that this case proceed to trial to resolve the remaining issues.

Under *Rule* 56(e), Federal Rules of Civil Procedure, summary judgment is proper only:

"[I]f the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to summary judgment as a matter of law."

A principal purpose of summary judgment is to isolate and dispose of meritless litigation. *Celotex Corp. v. Catrett,* 477 U.S. 317, 324, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986). The party moving for summary judgment has the burden to show initially the absence of a genuine issue concerning any material fact. *Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 159, 90 S.Ct. 1598, 1609, 26 L.Ed.2d 142 (1970). However, once the moving party has met its initial burden, the burden shifts to the nonmoving party to "establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett,* 477 U.S. at 322, 106 S.Ct. at 2552. To discharge this burden, the nonmoving party cannot rely on its pleadings, but instead must have evidence showing that there is a genuine issue for trial. *Id.* at 324, 106 S.Ct. at 2553. As will become apparent, the Court has concluded that each party is entitled to partial summary judgment on some issue of the case.

The relevant facts necessary to resolve the outstanding motions are not in dispute. Plaintiffs are former County Maintenance Superintendents for the Division of Highways, West Virginia Department of Transportation. Each Plaintiff is strongly affiliated with the Republican Party.

In November, 1988, Gaston Caperton, a Democrat, was elected Governor of West Virginia. Within a few months after taking office Governor Caperton, through his administration, advised the Plaintiff County Maintenance Superintendents their positions were being reevaluated. Each Plain-

tiff was given the opportunity to transfer to a lower valued position of Area Maintenance Manager. None of the Plaintiffs agreed to be transferred but each was ultimately removed as County Superintendent and placed in the demoted position. Defendants concede that the transfer of each Plaintiff was politically motivated.

Plaintiffs commenced this action pursuant to 42 U.S.C. § 1983, which provides in relevant part:

"Every person who, under color of any statute, ordinance, regulation, custom or usage, of any state ... subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunity secured by the Constitution and by-laws, shall be liable to the party injured...."

Plaintiffs also seek to invoke the Court's pendent jurisdiction by asserting various state law claims. Named as Defendants are Gaston Caperton, individually and in his official capacity as Governor of the State of West Virginia; Kenneth M. Dunn, individually and in his official capacity as Secretary of the Department of Transportation; and Art Gleason, individually and in his official capacity as Secretary of the Department of Transportation. Plaintiffs seek compensatory and punitive damages for their injuries as well as injunctive relief, including reinstatement to their former positions.

Since Defendants concede that each Plaintiff was transferred due to political reasons, the issue is whether the politically motivated transfer was contrary to law and if so, what remedies are available. The Court's ultimate conclusion is that the Plaintiffs were demoted in violation of their constitutional rights. For reasons which will become apparent, the Plaintiffs may seek damages against the Defendants in their individual capacity and may seek prospective injunctive relief against the Defendants in their official capacity.

### Eleventh Amendment

█ The Eleventh Amendment to the United States Constitution bars suits in federal court "by private parties seeking to impose a liability which must be paid from public funds in the state treasury...." *Edelman v. Jordan*, 415 U.S. 651, 663, 94 S.Ct. 1347, 1356, 39 L.Ed.2d 662 (1974). The congressional enactment of Section 1983 did not strip states of their Eleventh Amendment protection. *Will v. Michigan Dept. of State Police*, 491 U.S. 58, 66–67, 109 S.Ct. 2304, 2309–10, 105 L.Ed.2d 45 (1989). However, the Eleventh Amendment "provides no shield for a state official confronted by a claim that he had deprived another of a federal right under the color of state law." *Scheuer v. Rhodes*, 416 U.S. 232, 237, 94 S.Ct. 1683, 1687, 40 L.Ed.2d 90 (1974).

█ Although the Eleventh Amendment prohibits a plaintiff from seeking damages from a state's public treasury, damages may be awarded against individual defendants even though they hold public office. *Scheuer v. Rhodes*, 416 U.S. at 238, 94 S.Ct. at 1687. In other words, the Eleventh Amendment does not shield public officials from individual and personal liability under Section 1983. See *Hafer v. Melo*, —— U.S. ——, 112 S.Ct. 358, 116 L.Ed.2d 301 (1991).

█ Based upon Eleventh Amendment doctrine, the Plaintiffs' asserted claims against the State seeking damages from West Virginia's public treasury must fail. This holds true whether the asserted causes of action are based upon § 1983 or pendent state law claims. The Eleventh Amendment does not bar Plaintiffs' asserted causes of action to impose individual and personal liability against the named state official Defendants pursuant to Section 1983. Accordingly, the Court GRANTS the motion of Defendants Governor Gaston Caperton, Secretaries Kenneth Dunn and Art Gleason in their official capacities for summary judgment insofar as it relates to Plaintiffs' asserted remedy seeking compensatory and punitive damages ultimately payable by the State of West Virginia.

### Section 1983

█ It is well settled that patronage dismissal or patronage demotion of certain

public employees is violative of the right to freedom of political belief and association protected by the First Amendment to the United States Constitution. *Elrod v. Burns,* 427 U.S. 347, 96 S.Ct. 2673, 49 L.Ed.2d 547 (1976); *Branti v. Finkel,* 445 U.S. 507, 100 S.Ct. 1287, 63 L.Ed.2d 574 (1980); *Stott v. Haworth,* 916 F.2d 134 (4th Cir.1990); *Delong v. U.S.,* 621 F.2d 618 (4th Cir.1980); *Raker v. The City of Charleston,* 782 F.Supp. 308 (S.D.W.Va.1992). *Miller v. Board of Education of the County of Lincoln,* 450 F.Supp. 106 (S.D.W.Va. 1978). Patronage dismissal or demotion of a government official holding a policy-making position, however, is not in violation of the First Amendment.

■ In determining whether a political dismissal or political demotion is proper, the Court must focus on "whether the hiring authority can demonstrate that party affiliation is an appropriate requirement for the effective performance of the public office involved." *Branti v. Finkel,* 445 U.S. at 518, 100 S.Ct. at 1295. The Defendants have failed to so demonstrate.

To determine whether a particular employee is protected from patronage dismissal or transfer, "the critical and dispositive question is whether a particular position is one that requires, as a qualification for its performance, political affiliation." *Stott v. Haworth,* 916 F.2d at 143. The duties of a County Maintenance Superintendent for the West Virginia Division of Highways are not a position requiring political affiliation for its performance. Pursuant to the Department of Highways' own job description, a County Maintenance Superintendent is responsible to the District Engineer and the County Maintenance Superintendent "receives close day-to-day and technical assistance from the District Maintenance Assistant." The County Maintenance Superintendent is a subordinate position to carry out all instructions received from the district headquarters. The thrust of the job description of County Maintenance Superintendent is to carry out the policies and procedures set forth by the District Maintenance Engineer and/or the District Maintenance Assistant. Those above the County

Maintenance Superintendent include numerous division directors, the State Engineer, the Deputy Commissioner of Highways, the Commissioner of Highways, the Secretary of Transportation and the Governor. The hierarchy of the Department of Transportation strongly indicates that the County Maintenance Superintendent is a low level nonpolicy-making position.

Moreover, the Defendants have failed to identify any substantial policy decisions falling within the discretion of a County Maintenance Superintendent. The ability to carry out the job is not contingent upon party affiliation, but rather is based upon an individual's ability to follow the policies and directives set forth by an administration. Unless one assumes an employee would disobey or fail to implement a supervisor's lawful order because of politics (and this Court does not), political affiliation is not an appropriate requirement for those in low level positions delegated the duty of implementing various administrative programs. The Court is of the opinion that the position of County Maintenance Superintendent is a low level nonpolicy-making position protected from political discrimination under *Elrod v. Burns, supra,* and its progeny.

■ The Court concludes that those who serve as County Maintenance Superintendent are entitled protection from patronage dismissal or demotion pursuant to the First Amendment to the United States Constitution. *W. Va. Code,* § 29–6–4(d), as amended, to the extent that it includes County Road Supervisors or their successors as policy-making positions, fails to comport with the First Amendment. Accordingly, the Court declares *W. Va. Code,* § 29–6–4(d) unconstitutional to the extent that it includes County Road Supervisors or their successors as confidential or policy-making positions.

*Qualified Immunity*

■ The Defendants Gaston Caperton, Kenneth Dunn and Art Gleason assert the defense of qualified immunity. Public officials such as the Defendants enjoy a qualified or good faith immunity from suit for

decisions made while in public office. Qualified immunity is usually defined in terms of when it is inapplicable with the relevant inquiry being as follows:

"Qualified immunity would be defeated if an official *knew or reasonably should have known* that the action he took within his sphere of official responsibility would violate the constitutional rights of the [plaintiff] *or* if he took the action *with the malicious intention* to cause a deprivation of constitutional rights or other injury...."

*Harlow v. Fitzgerald,* 457 U.S. 800, 815, 102 S.Ct. 2727, 2737, 73 L.Ed.2d 396 (1982) (citing *Gomez v. Toledo,* 446 U.S. 635, 100 S.Ct. 1920, 64 L.Ed.2d 572 (1980)). Defendants assert an entitlement to qualified immunity since they were acting pursuant to statutory authority and they further allege that their conduct did not violate the Plaintiffs' clearly established statutory or constitutional rights. See *Mitchell v. Rice,* 954 F.2d 187 (4th Cir.1982); *Korb v. Lehman,* 919 F.2d 243 (4th Cir.1990).

■ At the time each Plaintiff was transferred, *W.Va.Code,* § 29–6–4(d) provided in relevant part:

"The legislature finds that the holding of political beliefs and party commitments, consistent or compatible with those of the governor contributes in an essential way to the effective performance of and is an appropriate requirement for occupying certain positions in state government such as ... any policy-making positions and County Maintenance Superintendents or their successors, and that such offices or positions are confidential in character and/or require their holders to act as advisors to the governor or his appointees, to formulate and implement the policies and goals of the governor or his appointees, or to help the governor or his appointees communicate with and explain their policies and views to the public, the legislature and the press."

Pursuant to this statutory authority, the Defendants treated the position of County Maintenance Superintendent as a policy-making position or its equivalent.

*W.Va.Code,* § 29–6–4(d) was added by House Bill No. 2665 in the West Virginia Legislature's regular session of 1989. The Bill was introduced by the Speaker of the House, Charles Chambers, and co-sponsored by the Minority Leader, Delegate Robert Burk, at the request of the Executive Branch. Acts of the Legislature of West Virginia, p. 3284 (1989 Regular Session). It was added as part of the overall legislative enactment governing civil service.

The overall legislative scheme appears to consider the holding of *Elrod v. Burns, supra,* and its progeny. For example, the legislative findings of § 29–6–4(d) recognize that political affiliation is an appropriate requirement for some policy-making positions, consistent with *Elrod v. Burns* and its progeny. A "policy-making position" is then defined as:

"A position in which the person occupying it (1) acts as an advisor to, or formulates plans for the implementation of broad goals for an administrator or the Governor, (2) is in charge of major administrative component of the state agency and (3) reports directly and is directly accountable to an administrator or the Governor."

*W.Va.Code,* § 29–6–2(m). Although this language appropriately defines a policy-making position, it can hardly be said that the position of County Maintenance Superintendent meets the West Virginia Legislature's own definition of a policy-making position. A County Maintenance Superintendent is not an advisor formulating plans for an administrator or the Governor, is not in charge of a major administrative component of the agency, and is not directly accountable to an administrator or the Governor. Merely listing this position in tandem with "policy-making" positions does not clothe it with the trappings of office it does not possess.

The Executive Branch, when requesting the enactment of *W.Va.Code,* § 29–6–4(d) recognized the problem of defining a County Maintenance Superintendent as a policy-making position. The language employed gives the Governor the power to "fill poli-

cy-making positions *and* County Road Supervisors or their successors" since such positions are confidential in nature. (Emphasis added). The Court views this effort to link County Road Supervisors to policy-making positions as a lame and transparent attempt to circumvent established First Amendment doctrine regarding patronage dismissals.

House Bill 2665, which included the addition of County Maintenance Superintendent to that of a policy-making position, was signed into law by Governor Caperton on April 21, 1989. On this same date, Governor Caperton approved numerous other bills and also vetoed numerous bills. *Journal of the House of Delegates*, 69th Legislature of West Virginia, Vol. 2, p. 2964–2971. Based upon the Executive Branch's sponsorship of the amendments to *W. Va. Code*, § 29–6–4(d) as well as the Governor specifically approving this enactment while rejecting others, knowledge of the contents of the bill is imputable to the Governor and the executives within his administration.

The statute in issue became effective on July 1, 1989. On July 20, 1989, Defendant Dunn, Secretary of the Department of Transportation, notified each Plaintiff by letter that changes were being considered due to the political nature of their jobs. All Plaintiffs refused to be transferred from their position of County Maintenance Superintendent and were forced to do so on October 12, 1989.

The Court's inquiry regarding qualified immunity is simply whether the Defendants' reliance upon authority of the newly drawn statute to transfer each Plaintiff was reasonable under the circumstances. The Court concludes that such reliance was unreasonable based upon what the Defendants knew or reasonably should have known of the established constitutional law surrounding political discharge.

Since at least 1976, it has been recognized that patronage dismissal of certain public employees is in violation of the right to freedom of political belief and association protected by the First Amendment to the United States Constitution. *Elrod v. Burns, supra.* This Court has applied this

rule consistently in this judicial district of West Virginia since 1978. *Miller v. Board of Education of the County of Lincoln, supra. Raker v. The City of Charleston, supra.* As previously analyzed, Plaintiffs' low level nonpolicy-making positions are the type of governmental positions recognized as protected by the First Amendment. Moreover, a County Maintenance Superintendent fails to meet the definition of a policy-maker under West Virginia law.

Extending qualified immunity to the state officials under these circumstances would be inappropriate and would invite similar conduct, disruptive to the orderly processes of government, after the next change of administration. The Caperton administration sponsored the bill to amend the Code to add County Maintenance Superintendents to those positions unprotected by the Constitution. The addition was obviously in violation of clearly established constitutional doctrine as it existed at the time. Defendants cannot reap the benefit of qualified immunity based upon the shield of statute when it was their actions which accomplished the challenged amendment. A deliberate path was chosen by the Defendants to clothe themselves with immunity through the enactment of *W. Va. Code*, § 29–6–4(d). Based upon the long-standing doctrine enumerated in *Elrod v. Burns, supra*, the Executive Branch sponsorship of the amendments to *W. Va. Code*, § 29–6–4(d), and the efforts to remove Plaintiffs from their positions within twenty days of the date County Maintenance Superintendents were defined as policy-making positions, the Court concludes that the Defendants knew or reasonably should have known that their actions would violate the established constitutional rights of each Plaintiff. Accordingly, the Court DENIES the motion of each Defendant for qualified immunity.

### Remedy

As well as proceeding against the Defendants in their individual capacity for damages, the Plaintiffs may seek injunctive relief against the state officials in their official capacity. State officials in their

official capacity are "persons" under Section 1983 for purposes of Plaintiffs' requested injunctive relief since "official-capacity actions for prospective relief are not treated as actions against the state." *Will v. Michigan Dept. of State Police*, 491 U.S. at 71 n. 10, 109 S.Ct. at 2311 n. 10 (citing *Kentucky v. Graham*, 473 U.S. 159, 167 n. 14, 105 S.Ct. 3099, 3106 n. 14, 87 L.Ed.2d 114 (1985)); *Ex Parte Young*, 209 U.S. 123, 159–160, 28 S.Ct. 441, 453–54, 52 L.Ed. 714 (1908).

### Conclusion

Accordingly, the Court partially grants the cross motions for summary judgment. The Court ORDERS that the previously scheduled final settlement conference and trial shall be continued and a final settlement conference shall be held at 9:00 a.m. on Monday, August 31, 1992, and the trial of this matter shall commence at 9:30 a.m. on Tuesday, September 1, 1992, in Charleston.