William T. KELLER, etc., et al.,
Plaintiffs,

v.

A. B. GILLIAM et al., Defendants-
Appellees.

J. A. ROONEY et al., Plaintiffs-
Appellants,

v.

A. B. GILLIAM et al., Defendants-
Appellees.

No. 71–2520.

United States Court of Appeals,
Fifth Circuit.

Jan. 3, 1972.

J. Joshua Stevens, Jr., West Point, Miss., for J. A. Rooney, and others.

Joe O. Sams, Jr., Columbus, Miss., for Wm. T. Keller, and others.

Tubb & Stevens, West Point, Miss., for plaintiffs-appellants.

William G. Burgin, Jr., W. H. Jolly, Jr., W. H. Jolly, Sr., Columbus, Miss., for defendants-appellees.

Before TUTTLE, GOLDBERG and DYER, Circuit Judges.

TUTTLE, Circuit Judge.

This is an appeal in a "one man-one vote" case, in which the district court fully agreed with the principle contended for by the plaintiffs, but postponed the granting of relief for the four year period of the term of office of persons who were to be elected some five months after the date of the trial court's order. Appellants here argued that, having found a gross disparity in the size of the five districts of Lowndes County, Mississippi,[1] the court should have required either at large elections from the entire county, without requiring each of the five candidates to be representative of one of the five districts, or the reapportionment of the county on an equal

1. According to the 1970 Federal Census, the following was the population for the five districts:

| | | |
|---|---|---|
| First District | 9,124 | 18.4% |
| Second District | 24,849 | 50.0% |
| Third District | 11,293 | 22.7% |
| Fourth District | 2,221 | 4.4% |
| Fifth District | 2,213 | 4.5% |
| Total Population | 49,700 | 100 % |

population basis, and elections to be held based upon the newly organized districts.

The trial court determined that there was not sufficient time within which to re-district Lowndes County prior to the 1971 elections, but ordered that the Board of Supervisors should submit a redistricting plan by December 1st, 1971 and that the plaintiffs should submit their objections by January 1st, 1972, with a hearing thereafter to be held to determine whether the plan meets all constitutional requirements. In the meantime, the court ordered that the elections for 1971 be held by all qualified voters voting for all candidates, but that to be elected to the board each candidate was required to be a resident from one of the five districts as presently constituted.

The city of Columbus, Mississippi comprises the Second and Third Districts with a total of some 36,000 population, representing 72.7% of the people in the county. Nevertheless, persons residing in the first, fourth and fifth district, which accounted for a total of 27.3% of the population could, of course, control the entire county government.

It must be borne in mind that we do not have here a case in which a number of candidates are to be chosen from several *equally* populated districts but are to be voted on by all of the voters of the governmental body, such as was dealt with in the statement of the Supreme Court in Fortson v. Dorsey, 379 U.S. 433, 85 S.Ct. 498, 13 L.Ed.2d 401 (1965).[2] The court found no cause for criticism of an at large vote by all of the electors of a county for more than one senator, so long as one senator was required to stand for election from each of the separate districts. No attack was made in Fortson v. Dorsey on the equality of the population of the different districts.

Neither do we have a case similar to Dusch v. Davis, 387 U.S. 112, 87 S.Ct. 1554, 18 L.Ed.2d 656 (1967), where there was a city council election in the newly consolidated city of Virginia Beach (formerly consisting of the city of Virginia Beach and all of the rest of Princess Ann County, Virginia) under what was known as the "seven-four plan". This plan required that there should be an eleven man council to be elected at large by all the voters in the city's seven boroughs; four of the councilmen could reside anywhere in the city, but each of the other seven had to live in a different one of the seven boroughs. These boroughs range in population from several hundred to 38,000 in size. The Supreme Court reversed the action of the Court of Appeals for the Fourth Circuit, which had held the plan was contrary to the "true thrust" of the "one man-one vote" principle of Reynolds v. Sims, 377 U.S. 533, 84 S.Ct. 1362, 12 L.Ed.2d 506 (1964) and "its kin".

What was clear in the Virginia Beach (Dusch) case is that there was no combination by which representatives residing in the districts comprising a minority of the population could combine to work their will over the majority residing in the heavier populated precincts, except with the concurrence of some of the four councilmen who could reside in any of the boroughs and who were elected at large. Quite the contrary is obviously true here. The three smallest (coincidentally, also rural, as distinguished from urban) districts have a total population of just over 22% of the county. Thus, the three supervisors resident in them can prevail in any vote of a five-member Board. The other two supervisors who reside in the remaining two districts could not prevail on any Board

---

**2.** The issue in Dorsey was whether a state could create some multi-district counties, some single district counties and some districts which were comprised of six or seven counties for the election of a *single* senator, while permitting the senators running from some multi-district counties to be voted on *at large*, rather than only by the voters of the senatorial district, as would be the case in all of the other districts described.

vote, although possessing nearly three-fourths of the population of the county.

We note that the Supreme Court drew attention to this special circumstance by quoting from the decision of the district court, which had approved the plan. "The plan does not preserve any controlling influence of the smaller boroughs. . . ." Moreover, in footnote 5 the court says, "It is obvious that, if the percentage of qualified voters is in accord with the population, Lynnhaven and Bayside [the two most populous boroughs], if united in their efforts, could elect all 11 councilmen even though the election were at large". It is equally true that Lynnhaven and Bayside, either with or without Kempsville (another populous borough) could elect a clear majority of the councilmen by adding their three to the four to be chosen at large. Thus, it is clear, that there was no opportunity in the Virginia City case for the thinly populated rural area to dominate the council as against the three or four predominately urban areas under the "seven-four plan".

It is also significant that the court noted the finding by the district court to the effect that "the history—past and present—of the area and population now comprising the city of Virginia Beach demonstrates the compelling need, *at least during an appreciable transition period,* for knowledge of rural problems and handling the affairs of one of the largest area-wide cities in the United States." (emphasis added) It will be noted that the offices which are involved in the case before us here are the offices of county supervisors, the responsibilities of which have in no wise changed over the years. The supervisors continue to handle the county affairs involving both rural and urban areas.

■ We conclude that the trial court correctly held that there was a duty on the county supervisors to realign the districts of Lowndes County, and the schedule provided by the court may well have been a proper one. However, having so decided, we think that it was

clear error for the court to permit an election to be held before the reapportionment was completed at which county supervisors would be elected *to hold office for a full four-year term.* It was deemed impractical to the court to require the reapportionment in time for the 1971 elections then the court should have done what we have since required to be done in somewhat similar situations. In Clarence Hall, Jr. and Willie Bunton et al. v. Issaquena County Board of Supervisors, et al., No. 71–2312, this court entered an order pending appeal on July 29, 1971 which provided as follows:

"It is further ordered that upon the approval of a legally sufficient plan by the district court, and, in any event, not later than May 16, 1972, the district court shall order that a final election be held under the laws of the State of Mississippi in the five (5) respective districts (beats) of Issaquena County for the selection of a board of supervisors in compliance with the Voting Rights Act of 1965, 42 U.S.C.A. Sections 1973, et seq., and in compliance with the one man-one vote mandate of the United States Constitution. Those supervisors elected pursuant to the terms of this order shall assume and hold the offices to which they are elected within thirty (30) days after such election. . . ."

On the same day this court in the case of Rev. Leon Howard and Barney Schoby, etc. v. Adams County Board of Supervisors et al., 453 F.2d 455, issued a similar order.

It appearing that similar relief is merited in this case, we adopt the language of the order quoted above.

■ It is therefore ordered that upon the approval of a legally sufficient plan by the district court, and, in any event, not later than May 30, 1972, the district court shall order that a final election be held under the laws of the State of Mississippi in the five (5) respective districts (beats) of Lowndes County for the selection of a board of supervisors in

compliance with the Voting Rights Act of 1965, 42 U.S.C.A. Section 1973 et seq., and in compliance with the one man-one vote mandate of the United States Constitution. Those supervisors elected pursuant to the terms of this order shall assume and hold the offices to which they are elected within thirty (30) days after such election.

The mandate shall issue forthwith.