DALLAS COUNTY, ALABAMA, ET AL. *v.*
REESE ET AL.

No. 74–1077.  Decided May 19, 1975

PER CURIAM.

Appellees are residents of the city of Selma, Ala.,
who brought this action to challenge the system by which
members of the Dallas County, Ala., Commission are
elected.  The system, which is established by a state
statute,[1] provides for countywide balloting for each of
the four commission members, but requires that a member be elected from each of four residency districts.[2]  Ap-

---

[1] Act No. 328, § 6, Acts of Alabama (Feb. 8, 1901) (as amended).
Our appellate jurisdiction is based on 28 U. S. C. § 1254 (2).

[2] The Judge of Probate of Dallas County is ex officio chairman
of the commission, and votes in the case of a tie vote among the

pellees' constitutional claim was premised on the fact
that the populations of the four districts vary widely,
with the result that only one resident of the city of Selma
can be a member of the commission, although the city
contains about one-half of the county's population.[3]

After extensive discovery, the United States District
Court for the Southern District of Alabama entered
summary judgment for appellants, Dallas County and the
members of the Dallas County Commission. The court
relied heavily on our decision in *Dusch* v. *Davis,* 387
U. S. 112 (1967), and concluded:

> "[T]he fundamental principle of representative gov-
> ernment has been fulfilled in that each County Com-
> missioner's tenure depends upon the vote of the
> qualified voters from the countywide electorate.
> This fact alone requires each County Commissioner
> to represent the county and not his own residential
> area." Jurisdictional Statement 15–16.

The Court of Appeals for the Fifth Circuit consid-
ered the case en banc and reversed, 8–6.[4] 505 F. 2d
879 (1974). The majority concluded that the unequal
residency districts diluted the votes of city residents,
and that the resulting discrimination was invidious.
It distinguished *Dusch* on the basis of the particular
facts of that case, which involved seven council mem-

---

commissioners. He is elected by countywide ballot and may reside
anywhere within the county.

[3] As shown by the 1970 official census, the population of each
of the residency districts is as follows:

| | |
|---|---|
| City of Selma | 27,379 |
| West | 6,209 |
| South | 14,203 |
| Fork | 7,505 |

[4] Judge Bell concurred in part and dissented in part. He would
have remanded to the District Court for an evidentiary hearing on
the question of invidious discrimination.

bers elected from unequal residency boroughs, and four council members who could live anywhere in the city; according to the Court of Appeals, the effect was to assure that a majority of the 11-man council could not be assembled without the cooperation of either one "representative" of the heavily populated boroughs or of one member of unrestricted residency. In the present case, on the other hand, the structure of the commission is such that the three commissioners who reside outside of Selma can control the commission, even though they "represent" only a slight majority of the population.[5] The dissenters in the Court of Appeals thought that *Dusch* controlled. We agree, and reverse the Court of Appeals.

*Dusch* reaffirmed the principle enunciated in *Fortson* v. *Dorsey*, 379 U. S. 433, 438 (1965), that when an official's "tenure depends upon the county-wide electorate he must be vigilant to serve the interests of all the people in the

---

[5] In fashioning this distinction of *Dusch*, the Fifth Circuit relied on a prior decision of a panel of that court, *Keller* v. *Gilliam*, 454 F. 2d 55 (1972). According to the Court of Appeals, and for the reasons stated in the text, "[i]n *Keller*, as in the present case, preserving majority rule was not possible, and the plan was struck down." 505 F. 2d 879, 885 (1974).

Given the populations of the four residence districts, see n. 3, *supra*, it is difficult to understand how the Fifth Circuit's distinction of *Dusch* is applicable even to the facts of this case. According to the 1970 census, the city district has a population of 27,379, while the three rural districts have a combined population of 27,917. Thus should the commissioners who reside in the rural districts vote together, their control of the commission does in fact reflect their "representation" of a majority of the county's population. Nor is it possible in any other fashion to obtain a majority of the commission without the votes of either commissioners "representing" a majority of the county's population or of the Judge of Probate whose residency is unrestricted. These facts have no bearing on our disposition of this case, but they do seem to be inconsistent with the rationale on which the Court of Appeals based its decision.

county, and not merely those of people in his home district." Because the districts in the present plan are used "merely as the basis of residence for candidates, not for voting or representation," *ibid.; Dusch* v. *Davis, supra,* at 115, each commissioner represents the citizens of the entire county and not merely those of the district in which he resides. We think that this teaching of *Dusch* and of *Fortson* v. *Dorsey* was all but ignored by the Court of Appeals, which chose instead to focus on a factual element of *Dusch* which was accorded absolutely no significance in the opinion in that case. Nor do we understand what significance could be attached to the presence of council members subject to no residence requirement, given the basic teaching that elected officials represent all of those who elect them, and not merely those who are their neighbors.

The Court of Appeals was, of course, correct in recognizing that *Dusch* does not entirely insulate a plan such as this from constitutional attack. As that opinion noted: "If a borough's resident on the council represented in fact only the borough, . . . different conclusions might follow." 387 U. S., at 116. Similarly, in *Dusch* we approvingly quoted a portion of the District Court's opinion, including the following passage:

> " 'As the plan becomes effective, if it then operates to minimize or cancel out the voting strength of racial or political elements of the voting population, it will be time enough to consider whether the system still passes constitutional muster.' " *Id.,* at 117.

We think it clear, however, that *Dusch* contemplated that a successful attack raising such a constitutional question must be based on findings in a particular case that a plan in fact operates impermissibly to dilute the voting strength of an identifiable element of the voting population. Rather than basing its decision on a factual con-

clusion of this sort, the Court of Appeals relied on a theoretical presumption to reach its determination that residents of Selma were victims of invidious discrimination. That theoretical presumption is that elected officials will represent the districts in which they reside rather than the electorate which chooses them. But that is precisely the proposition rejected in *Dusch.*

For the foregoing reasons, the judgment of the Court of Appeals must be reversed, and the cause is remanded for further proceedings not inconsistent with this opinion.

*It is so ordered.*

MR. JUSTICE DOUGLAS took no part in the consideration or decision of this case.