535 F.2d 277
 Henry W. McGILL, for himself and others similarly situated,
Plaintiffs-Appellants,
v.
GADSDEN COUNTY COMMISSION et al., Defendants-Appellees.
Witt CAMPBELL, for himself and others similarly situated,
Plaintiffs-Appellants,
v.
GADSDEN COUNTY SCHOOL BOARD et al., Defendants-Appellees.
 No. 74-3137.
 United States Court of Appeals,
Fifth Circuit.
 June 29, 1976.
 
 Kent Spriggs, Charles L. Keesey, Tallahassee, Fla., Charles E. Williams, III, Jack Greenberg, Legal Defense Fund, New York City, for plaintiffs-appellants.
 C. Graham Carothers, Tallahassee, Fla., Richard J. Gardner, Quincy, Fla., for Gadsden County School Bd.
 Alton M. Towles, Quincy, Fla., for Gadsden County Commission.
 Appeal from the United States District Court for the Northern District of Florida.
 Before WISDOM,* GEWIN and AINSWORTH, Circuit Judges.
 PER CURIAM:
 
 
 1
 This case presents challenges to the at-large voting schemes that are used to elect members of the County Commission and the County School Board of Gadsden County, Florida.
 
 
 2
 Gadsden County is in rural northwest Florida. Its largest city is Quincy, which, in 1970, had a population of about 8,000. About 59 percent of the population and 49.36 percent of the registered voters in the County were black in 1970.
 
 
 3
 H. W. McGill has challenged the method of electing County Commissioners, which is specified in the state constitution.[1] The County is divided into 5 districts; each Commissioner must reside in the district he represents, but is elected at-large by the voters in the County.[2] Witt Campbell has challenged the statutory method of electing School Board members, which is the same.[3]
 
 
 4
 The plaintiffs have argued that these election schemes unconstitutionally dilute the voting strength of blacks. They asked the district court to adopt single-member district plans for the County. Because Campbell had not made an unqualified declaration of his candidacy in the next School Board election, the court dismissed the action against the Board for lack of a case or controversy. The court also granted judgment on the merits in favor of the Gadsden County Commission, holding that McGill failed to satisfy his legal burden as set out in the "voting dilution" cases of the Supreme Court and this circuit. Both decisions have been appealed.
 
 I. The Gadsden County School Board
 
 5
 In dismissing the action against the School Board, the district court reasoned that the alleged injury was limited in impact to those blacks who had run for or definitely intended to run for election to the School Board. In its brief on appeal, the Board adds the argument that, although Campbell purports to represent the class of all registered voters in Gadsden County, the record does not establish that Campbell himself is a registered voter.
 
 
 6
 Both of these arguments are lacking in merit. The district court's reasoning is inconsistent with the holdings of the Supreme Court that all citizens are entitled to an equal opportunity to participate in the political processes and to elect legislators of their choice. See, e. g., White v. Regester, 1973, 412 U.S. 755, 765-66, 93 S.Ct. 2332, 37 L.Ed.2d 314; Whitcomb v. Chavis, 1971, 403 U.S. 124, 129, 91 S.Ct. 1858, 29 L.Ed.2d 363. The Board's argument fails because Campbell was a candidate for Superintendent of Public Instruction of Gadsden County in 1972, and we may take judicial notice of the fact that Fla.Stat. § 99.021 requires every candidate for office to be a qualified elector of the State.
 
 
 7
 We therefore reverse the district court's judgment granting the Gadsden County School Board's motion to dismiss and remand for proceedings consistent with this opinion.
 
 II. The Gadsden County Commission
 
 8
 The plaintiff argues that because of the unique posture of the political system in Gadsden County, the at-large method of electing Commissioners operates to unconstitutionally minimize the voting strength of blacks. The factors that the plaintiff stresses are "the past and continuing instances of racial discrimination" and the effect they have had on the ability of blacks to vote and select their representatives; the requirement that primary candidates win a majority, rather than a plurality, of the votes to become their party's nominee in the general election; and the isolation of blacks from the mainstream of the Democratic Party, the majority party in Gadsden County. The plaintiff contends that, despite their substantial portion of the electorate and slight majority status in the County Democratic Party,[4] blacks are "isolated" from the mainstream of the Party because there is racially polarized voting in the County and blacks have a more difficult time than whites in getting out their votes. The plaintiff attributes this difficulty to the educational and economic disparities between blacks and whites and the history of harassment and official discrimination against blacks seeking to vote.[5] To support his argument that blacks have been prevented by the at-large electoral system from becoming an effective political force in Gadsden County, the plaintiff contends that the County Commissioners have been and are unresponsive to the needs of blacks and points out that, although blacks have run regularly for county-wide offices since the middle 1960's, none have been elected.
 
 
 9
 The defendants respond (and the district court agrees) that, given the blacks' substantial portion of the electorate, the only barrier to their development as an effective political force is the apathy of their own potential voters. Moreover, the defendants argue, the plaintiff has the burden of proving that the elected representatives are not responsive to the needs of their black constituents. And, they continue, the district court was correct in finding that "there (has not) been any showing that elected county . . . officials have failed to respond to the needs of blacks in the county . . . ."
 
 
 10
 The plaintiff in a voting dilution case has the burden of showing that his "group has been denied access to the political process equal to the access of other groups". Chapman v. Meier, 1975, 420 U.S. 1, 17, 95 S.Ct. 751, 761, 42 L.Ed.2d 766. See also White v. Regester, 412 U.S. at 765-66, 93 S.Ct. 2332, 37 L.Ed.2d 314; Whitcomb v. Chavis, 403 U.S. at 149-50, 91 S.Ct. 1858, 29 L.Ed.2d 363. In Zimmer v. McKeithen, 5 Cir. 1973, 485 F.2d 1297, 1305 (en banc), aff'd per curiam sub nom., East Carroll Parish School Board v. Marshall, --- U.S. ---, 96 S.Ct. 1083, 47 L.Ed.2d 296, we filled in the specifics of this test and set out the standards that still control voting dilution cases in this circuit:[6]
 
 
 11
 (W)here a minority can demonstrate a lack of access to the process of slating candidates, the unresponsiveness of legislators to their particularized interests, a tenuous state policy underlying the preference for multi-member or at-large districting, or that the existence of past discrimination in general precludes the effective participation in the election system, a strong case (of dilution) is made. . . . The fact of dilution is established upon proof of the existence of an aggregate of these factors. The Supreme Court's recent pronouncement in White v. Regester, supra, demonstrates, however, that all these factors need not be proved in order to obtain relief.
 
 
 12
 The plaintiff in this case has established only the last of the four elements of a dilution case enunciated in Zimmer. First, there is no slating of candidates by the Democratic Party in Gadsden County; Party nominees are chosen through an open primary election and the Party does not endorse candidates until after the primary. Second, the district court's rejection of the plaintiff's attempted showing that elected County officials are unresponsive to blacks is not clearly erroneous.[7] Third, there has been a state policy in favor of at-large County Commissioner districts since 1900.[8] This policy could not have had racist underpinnings because other, less subtle state mechanisms had already disenfranchised almost all black voters by the turn of the century. Cf. Taylor v. McKeithen, 5 Cir. 1974, 499 F.2d 893, 896. Fourth, however, the plaintiffs have established that blacks in Gadsden County have been subjected to an extensive history of discrimination. The primary issue in this case is whether this showing, standing alone, is sufficient to carry the plaintiff's burden.
 
 
 13
 This Court has repeatedly held that the existence of past racial discrimination is relevant to a decision whether at-large electoral districts unconstitutionally dilute the voting strength of blacks.[9] We reaffirm the importance of past discrimination to decisions about the dilutive effects of at-large voting schemes. The key question, however, is whether "the existence of past discrimination in general precludes the effective participation (of blacks) in the election system" today. Zimmer, 485 F.2d at 1305. The 9 percent discrepancy between the black portion of the population in Gadsden County (58%) and the black portion of the registered voters (49%) is possibly due, in some degree, to the inhibitory effects of the past discrimination suffered by blacks. But, especially when the black registered voters constitute almost half of the registered voters in the County and over half of the membership of the majority party, we cannot say that the effects of past discrimination, in themselves, cause an at-large voting scheme to unconstitutionally deny blacks access to the political process.[10] As in Chavis, there is no substantial evidence in the instant case that blacks are not allowed to register or vote, to choose the political party they desire to support, and to fully participate in the nominating process of the party. See also Bradas v. Rapides Parish Police Jury, 5 Cir. 1975, 508 F.2d 1109, where we upheld another at-large voting plan. Nor is there substantial evidence that the elected officials of Gadsden County have been unresponsive to the needs of their black constituents. Indeed, given the significant number of black voters in the County, an elected official (whether black or white) would have to be responsive to black interests in order to be re-elected.
 
 
 14
 We affirm the district court's judgment in favor of the Gadsden County Commission. The mandate shall issue forthwith.
 
 
 15
 AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.
 
 
 
 *
 Judge Wisdom was a member of the panel that heard oral arguments but due to illness did not participate in this decision. The case is being decided by a quorum. 28 U.S.C. § 46(d)
 
 
 [1]
 Fla.Const. art. VIII, § 1(e)
 
 
 [2]
 The Supreme Court recently upheld such an election scheme in Dallas County, Alabama v. Reese, 1975, 421 U.S. 477, 95 S.Ct. 1706, 44 L.Ed.2d 312, rev'g 5 Cir. 1974, 505 F.2d 879 (en banc)
 
 
 [3]
 Fla.Stat.Ann. §§ 230.04, 230.061, 230.08, 230.10 (1961)
 
 
 [4]
 In 1972 the Democratic Party was comprised of 7575 blacks and 7476 whites
 
 
 [5]
 As examples the plaintiff cites the poll tax enforced in Florida between 1889 and 1941, the white primary instituted by the Democratic Party in 1901, and the resistance to and harassment of black leaders who attempted to register blacks in the middle 1960's
 
 
 [6]
 The Supreme Court affirmed the judgment in Zimmer v. McKeithen, "but without approval of the constitutional views expressed by (this) Court." --- U.S. at ---, 96 S.Ct. at 1085, 47 L.Ed.2d at 299. The Supreme Court expressed no view on the dilution standards set out in Zimmer v. McKeithen; those standards are hence still controlling in this circuit. See Nevett v. Sides, 5 Cir. 1976, 533 F.2d 1361
 
 
 [7]
 The absence of a showing of unresponsiveness does not in itself foreclose the successful assertion of a voting dilution claim. "Were we to hold that the absence of a claim of representation unresponsive to a minority's needs foreclosed constitutional attack, the voting strength of minorities could be freely diluted without fear of constitutional restraint." Zimmer, 485 F.2d at 1306-07 n. 26. Accord, Turner v. McKeithen, 5 Cir. 1973, 490 F.2d 191, 195
 
 
 [8]
 Article 8, § 5 of the Florida Constitution of 1885 provided for the appointment of the County Commissioners by the Governor. In 1900 this section was amended to require the election of each Commissioner by the voters of his County
 
 
 [9]
 See, e. g., Wallace v. House, 5 Cir. 1975, 515 F.2d 619, 623-24, judgment vacated, 1976, --- U.S. ---, 96 S.Ct. 1721, 47 L.Ed.2d ---; Bradas v. Rapides Parish Police Jury, 5 Cir. 1975, 508 F.2d 1109, 1112; Robinson v. Commissioner's Court, Anderson County, 5 Cir. 1974, 505 F.2d 674, 679; Moore v. Leflore County Board of Election Commissioners, 5 Cir. 1974, 502 F.2d 621, 627; Turner v. McKeithen, 5 Cir. 1973, 490 F.2d 191, 195; Zimmer v. McKeithen, 5 Cir. 1973, 485 F.2d 1297, 1305 (en banc), aff'd per curiam, 1976, --- U.S. ---, 96 S.Ct. 1083, 47 L.Ed.2d 296. Accord, White v. Regester, 1973, 412 U.S. 755, 93 S.Ct. 2332, 37 L.Ed.2d 314, 324; Lipscomb v. Wise, N.D.Tex.1975, 399 F.Supp. 782, 790; Yelverton v. Driggers, N.D.Ala.1974, 370 F.Supp. 612, 619
 
 
 [10]
 In Wallace v. House, 5 Cir. 1975, 515 F.2d 619, this Court invalidated the at-large aldermanic election scheme of Feriday, Louisiana because of its dilutive effect on the black vote. Blacks in Feriday constituted 58 percent of the population and 49.5 percent of the registered voters. The decision was based, in part, on the past racial discrimination suffered by blacks. Because our judgment was vacated by the Supreme Court, 1976, --- U.S. ---, 96 S.Ct. 1721, 47 L.Ed.2d ---, that decision cannot govern the present case