[953 NE2d 753, 929 NYS2d 515]

In the Matter of ARTHUR J. WALSH et al., Respondents, v ANITA S. KATZ et al., Respondents, and DANIEL C. ROSS, Appellant. (And a Third-Party Action.)

Argued April 26, 2011; decided June 2, 2011

**POINTS OF COUNSEL**

*Daniel C. Ross*, Mattituck, appellant pro se. I. Equal protection guarantees are violated when voters are required to choose

one of the six town board members from 1.5% of the population. (*Wesberry v Sanders*, 376 US 1; *Bullock v Carter*, 405 US 134; *Williams v Rhodes*, 393 US 23; *Sununu v Stark*, 383 F Supp 1287, 420 US 958; *Dunn v Blumstein*, 405 US 330; *Matter of Campbell v Tunny*, 196 Misc 2d 860; *Reynolds v Sims*, 377 US 533; *Phelan v City of Buffalo*, 54 AD2d 262; *Landes v Town of N. Hempstead*, 20 NY2d 417; *Board of Estimate of City of New York v Morris*, 489 US 688.) II. The constitutionality of the residency requirement should be measured by strict scrutiny. (*Galbraith v New York Conservative Party*, 155 AD2d 183; *Chimento v Stark*, 353 F Supp 1211, 414 US 802; *Sununu v Stark*, 383 F Supp 1287, 420 US 958; *Matter of Campbell v Tunny*, 196 Misc 2d 860; *Stapleton v Clerk for City of Inkster*, 311 F Supp 1187; *Hadnott v Amos*, 320 F Supp 107, 401 US 968; *Bolanowski v Raich*, 330 F Supp 724; *Green v McKeon*, 335 F Supp 630; *Mogk v City of Detroit*, 335 F Supp 698; *McKinney v Kaminsky*, 340 F Supp 289.) III. The apportionment cases are most similar to this case and should be controlling. (*Hadley v Junior College Dist. of Metropolitan Kansas City*, 397 US 50; *Dusch v Davis*, 387 US 112; *Dallas County v Reese*, 421 US 477; *Wesberry v Sanders*, 376 US 1; *Reynolds v Sims*, 377 US 533; *Luther v Borden*, 7 How [48 US] 1; *Board of Estimate of City of New York v Morris*, 489 US 688.)

*Smith, Finkelstein, Lundberg, Isler & Yakaboski, LLP*, Riverhead (*Frank A. Isler* of counsel), for Town of Southold, respondent. I. This appeal has been rendered moot since appellant was not elected. (*Matter of Hearst Corp. v Clyne*, 50 NY2d 707; *Wisholek v Douglas*, 97 NY2d 740; *Matter of Citineighbors Coalition of Historic Carnegie Hill v New York City Landmarks Preserv. Commn.*, 2 NY3d 727.) II. The Appellate Division, Second Department, correctly applied the rationally related test to sustain the statute. (*Matter of Rosenstock v Scaringe*, 40 NY2d 563; *Galbraith v New York Conservative Party*, 155 AD2d 183; *Dusch v Davis*, 387 US 112; *Board of Estimate of City of New York v Morris*, 489 US 688; *Dallas County v Reese*, 421 US 477; *Fortson v Dorsey*, 379 US 433.)

*Twomey, Latham, Shea, Kelley, Dubin & Quartararo, LLP*, Riverhead (*Patrick B. Fife* and *Lauren E. Stiles* of counsel), for Arthur J. Walsh and another, respondents. The residence requirement is constitutional and does not violate the equal protection rights of Daniel Ross or the voters of the Town of Southold. (*LaValle v Hayden*, 98 NY2d 155; *Wasmuth v Allen*, 14 NY2d 391, 379 US 11; *I. L. F. Y. Co. v City Rent &*

*Rehabilitation Admin.*, 11 NY2d 480; *People v Tichenor*, 89 NY2d 769; *People v Pagnotta*, 25 NY2d 333; *Alliance of Am. Insurers v Chu*, 77 NY2d 573; *Mugler v Kansas*, 123 US 623; *Thompson v Wallin*, 301 NY 476; *Nordlinger v Hahn*, 505 US 1; *Galbraith v New York Conservative Party*, 155 AD2d 183.)

**OPINION OF THE COURT**

JONES, J.

At issue, in this proceeding pursuant to Election Law § 16-102, is the constitutionality of the residency requirement for the elected position of town justice/town board member, Fishers Island, Town of Southold, Suffolk County (L 1860, ch 113, § 2, as amended by L 1898, ch 373, § 1, as further amended by L 1977, ch 276, § 1). We hold that the residency requirement does not violate the Equal Protection Clause. In so holding, we conclude that the requirement is subject to a rational basis test, and that a rational basis exists to justify the requirement.

I.

Fishers Island is situated in the Town of Southold and located approximately 11 miles off the North Fork of the eastern coast of Long Island. While the island is only about two miles from the Connecticut coast, and has no direct ferry service to the mainland portion of the town, it has historically been part of Southold in Suffolk County.

The island is Election District 1 in the Town of Southold. According to data compiled from the 2000 United States Census, a total of 20,599 individuals resided in Southold. Of this number, 289 individuals were residents of Fishers Island, which represents approximately 1.5% of Southold's population.

In 1860, the State Legislature enacted a law providing for a fifth justice of the peace for the Town of Southold (*see* L 1860, ch 113, § 2). Pursuant to the law, the fifth justice of the peace was required to reside either upon Fishers Island or upon one of the islands adjacent thereto (*id.*). At the time the law was enacted, justices of the peace were also members of the Southold Town Board. The law was amended in 1898 to require the fifth justice of the peace to reside on Fishers Island itself (*see* L 1898, ch 373, § 1).

In 1976, pursuant to Laws of 1976, chapter 739, § 2 (adding Town Law § 60-a), the Legislature eliminated the dual role and town justices no longer served on town boards. This legislation had no effect on the requirement that the fifth justice reside on Fishers Island.

In 1977, the Legislature reinstituted the dual town justice/
town board member position for Fishers Island and continued
the long-standing residency requirement (*see* L 1977, ch 276,
§ 1), as follows:

> "*There shall be elected at the meeting of the Town of
> Southold*, in the county of Suffolk, to be held in the
> spring of [1899], and *every four years* thereafter, *one
> town justice who shall reside upon Fisher's island
> in said town.* The justice so elected shall enter upon
> the duties of his office at the expiration of the term
> of office of his predecessor, and shall hold his office
> for four years. Notwithstanding the provisions of
> any other law, *such town justice residing upon
> Fisher's island shall, in addition to his duties as
> town justice, serve as a member of the Southold town
> board*" (emphasis added).[1]

The Bill Jacket accompanying chapter 276 of the Laws of 1977
sets forth the Legislature's rationale in support of this enact-
ment. It states, in pertinent part:

> "The effect of the 1976 enactment is to remove the
> Fishers Island town justice from the Town Board
> and thus leave the people of Fishers Island without
> any representation.

> "Moreover, there is no direct transportation be-
> tween Fishers Island and the mainland of the Town
> of Southold and therefore, it is virtually impossible
> for the Fishers Island residents to attend Town
> Board meetings. It has been the custom for the res-
> ident town justice of Fishers Island to keep the
> residents of the Island apprised of Town matters as
> well as to present their views on various issues
> which may concern them. In effect, the Fishers
> Island town justice, as a member of the Town Board,
> has acted as the link between Town government
> and the people of Fishers Island. It has been argued
> that the effect of the 1976 amendment to the Town
> Law is to deprive the residents of Fishers Island
> from meaningful participation in Town govern-
> ment" (Sponsor's Mem, Bill Jacket, L 1977, ch 276;

---

1. The 1977 legislation also replaced the "justice of the peace" title with
"town justice" (*see* Dept of State Mem from M. Cuomo, June 6, 1977, Bill
Jacket, L 1977, ch 276).

*see also id.*, I. Evanick letter, June 2, 1977 [stating, "By operation of law the residents of Fishers Island, who are in a unique geographical position, will suffer the loss of meaningful representation. This legislation was intended to rectify this situation"]; *id.*, Dept of State Mem from M. Cuomo, June 6, 1977 [Mem noted that application of the 1976 legislation to Southold would be "unfeasible" given the "unusual circumstances" regarding Fishers Island's access to Southold and the island's "limited population base," and stated that "(r)epresentation on the town board is the primary consideration"]).

Since 1977, there have been no further amendments to the Fishers Island residency requirement for the elected position of town justice/town board member, which position is elected in a town-wide election.

## II.

In July 2009, respondent Daniel C. Ross, a resident of Southold but not a resident of Fishers Island, filed with the Suffolk County Board of Elections (BOE) a petition designating himself a candidate in the September 2009 primary election for the nomination of the Democratic Party as its candidate for the Fishers Island town justice/town board member seat. Petitioners Arthur J. Walsh and Nina J. Schmid—residents of Fishers Island—filed objections to the designating petition, alleging that it was invalid because Ross did not meet the residency requirement. Respondents Anita S. Katz and Cathy L. Richter Geier, as Commissioners of the BOE, denied the objections and upheld the designating petition.

Petitioners commenced this Election Law proceeding seeking to prohibit the BOE from placing Ross's name on the ballot for the September 2009 primary election or the November 2009 general election based on Ross's failure to meet the residency requirement. Ross counterclaimed and, in effect, cross-petitioned to validate the designating petition, challenging, among other things, the constitutionality of the residency requirement. Ross also sought to join the Town of Southold and the State of New York as parties.

Supreme Court denied the petition and dismissed the proceeding, without prejudice, on the ground that Ross was not required to meet the residency requirement until 30 days after the commencement of the term of office—in this case, by January 30,

2010. The Appellate Division modified the Supreme Court order and upheld the constitutionality of the statute on equal protection grounds (66 AD3d 1052 [2d Dept 2009]). The court held that a rational basis standard was applicable, and that a rational basis exists to support the Legislature's determination that the fifth town justice/town board member for Southold should be a resident of Fishers Island. With respect to Supreme Court's ruling that the prevailing candidate need not abide by the residency requirement until 30 days after beginning his or her term of office, the court modified Supreme Court's order by holding that January 1, 2010 was the appropriate date by which a candidate had to meet the residency requirement.

Ross appeals as of right, pursuant to CPLR 5601 (b) (1) constitutional question grounds, as limited by his notice of appeal, from that portion of the Appellate Division order that: (1) upheld the constitutionality of the Fishers Island residency requirement; and (2) remitted the matter to Supreme Court for entry of a judgment declaring that Ross did not establish that the challenged law is unconstitutional. Ross challenges the residency requirement only as it applies to the position on the Town Board of the Town of Southold.

Although Ross lost the November 2009 general election, this appeal presents a live controversy. Supreme Court converted and continued Ross's constitutional claims as a declaratory judgment action, and the Appellate Division decided the constitutional issues. Though no longer a candidate, Ross is a voter who claims that his right to vote is being unconstitutionally burdened.

### III.

Ross argues that the Appellate Division improperly used a rational basis standard, as opposed to a strict scrutiny standard, in determining that the residency requirement was constitutional. He contends that the residency requirement is subject to strict scrutiny because it affects fundamental interests—the right to run for public office and the right to vote.

Ross further argues that the residency requirement violates equal protection guarantees by reserving one Town Board seat to a group of people that make up less than 1.5% of the Town of Southold's population. He contends that every voter's interest in being able to vote for this office is limited by the residency requirement. Relying on *Reynolds v Sims* (377 US 533 [1964]), Ross argues that the residency requirement violates the

constitutional right of a qualified voter not to have his/her vote diluted. According to Ross, even when the seat is contested, the person who ultimately occupies the office must be a Fishers Island resident, thereby creating a district within an otherwise at-large town election system that violates the equal protection provisions of the Federal and State Constitutions.

Next, Ross argues there is no governmental interest promoted by the residency requirement. He maintains that the reasons for the challenged legislation, which are set forth in the Bill Jacket, are not compelling, and no rational bases support the law. We disagree with Ross's arguments.

Section 1 of the 14th Amendment to the Federal Constitution provides in part that "[n]o State shall . . . deny to any person within its jurisdiction the equal protection of the laws." The Federal Equal Protection Clause extends to the states and their subdivisions (*see e.g. Hunter v Erickson*, 393 US 385 [1969]), and this Court has held that the State Constitution's equal protection guarantee (NY Const, art I, § 11 ["No person shall be denied the equal protection of the laws of this state or any subdivision thereof"]) is as broad in its coverage as that of the Fourteenth Amendment (*see Golden v Clark*, 76 NY2d 618, 624 [1990] [citations omitted]).

"[V]oting is of the most fundamental significance under our constitutional structure" (*Illinois Bd. of Elections v Socialist Workers Party*, 440 US 173, 184 [1979]); however, the right to vote in any manner and the right to associate for political purposes through the ballot are not absolute (*see Munro v Socialist Workers Party*, 479 US 189, 193 [1986]). States play an active role in structuring and regulating their own elections (*see Tashjian v Republican Party of Conn.*, 479 US 208, 217 [1986]; *Storer v Brown*, 415 US 724, 730 [1974] ["(A)s a practical matter, there must be . . . substantial (governmental) regulation of elections if they are to be fair and honest and if some sort of order, rather than chaos, is to accompany the democratic processes"]). Moreover, because election laws invariably impose some burden upon individual voters (*see Anderson v Celebrezze*, 460 US 780, 788 [1983] ["whether (the voting regulation) governs the registration and qualifications of voters, the selection and eligibility of candidates, or the voting process itself, (the regulation) inevitably affects—at least to some degree—the individual's right to vote and his right to associate with others for political ends"]), subjecting all voting regulations to strict scrutiny, and requiring that the regulations be narrowly tailored

to advance a compelling state interest, could interfere with the state's ability to ensure the fair and efficient operation of elections.

Thus, a court considering an equal protection challenge to a state election law must weigh "the character and magnitude of the asserted injury to the rights protected by the First and Fourteenth Amendments that the plaintiff seeks to vindicate" against "the precise interests put forward by the State as justifications for the burden imposed by its rule," taking into consideration "the extent to which those interests make it necessary to burden the plaintiff's rights" (*Anderson*, 460 US at 789; *Tashjian*, 479 US at 213-214). In sum, a court's inquiry into the propriety of a state election law depends upon the extent to which a challenged regulation directly infringes upon First and Fourteenth Amendment rights.

The direct impact of the Fishers Island residency requirement is not on one's right to vote, but on an individual's right to be a candidate for public office. Although "laws that affect candidates always have at least some theoretical, correlative effect on voters . . . , not every limitation or incidental burden on the exercise of voting rights is subject to a stringent standard of review" (*Bullock v Carter*, 405 US 134, 143 [1972]). That is, the mere fact that a state election law "creates barriers . . . tending to limit the field of candidates from which voters might choose . . . does not of itself compel close scrutiny" (*id.*; *see Galbraith v New York Conservative Party*, 155 AD2d 183, 185-186 [3d Dept 1990] [the right to run for elective office is not fundamental]).[2]

Ross cannot point to a residency requirement case that supports his position. Instead, he argues that this case should be considered under the analysis applied in apportionment cases which involve the "one person, one vote" principle. However, Ross's reliance on these cases in support for stringent review of the residency requirement is misplaced. In the apportionment cases cited by Ross, there were disproportionate numbers of voters in two districts, where each district directly elected its own representative. This resulted in unequal voting power between the two groups of voters, and the Supreme Court found that the citizens' votes had been diluted (*see Reynolds v Sims*,

---

**2.** Strict scrutiny has been held applicable to ballot access cases involving restrictions based on wealth or restrictions that impose special burdens on new or small political parties or independent candidates (*see Golden v Clark*, 76 NY2d at 624-626).

*supra*; *Hadley v Junior College Dist. of Metropolitan Kansas City*, 397 US 50 [1970]; *Board of Estimate of City of New York v Morris*, 489 US 688 [1989]).

Here, the challenged residency requirement imposes only reasonable, nondiscriminatory restrictions upon the First and Fourteenth Amendment rights of the voters of the Town of Southold. Since all Town Board members are elected in a town-wide election, the voters are not unduly restricted in their choice of candidates for Town Board positions. As a result, all Southold voters may vote in the elections for all six Town Board positions, including the position reserved for the Fishers Island town justice. Stated differently, each citizen of the town has an equal vote as they are all entitled to vote for the town justice/town board seat.

Further, the residency requirement does not require a candidate to be a resident of Fishers Island prior to commencement of his/her term of office. In other words, the winner of the town justice/town board position does not need to establish residency on Fishers Island until the beginning of his/her term, and must only retain that residency for the duration of the term. Thus, any Southold resident who would otherwise be eligible to run for political office can run for the Fishers Island seat.

Notably, the United States Supreme Court has addressed similar residency requirements in *Dusch v Davis* (387 US 112 [1967]) and *Dallas County v Reese* (421 US 477 [1975]). In *Dusch* and *Dallas County*, the Supreme Court rejected equal protection challenges, upholding electoral plans in which candidates were required to be residents of specific geographic areas within a larger political unit so long as all of the voters in the larger political unit were allowed to vote for each candidate. The Supreme Court recognized that a state has a legitimate interest in assuring an elected representative is familiar with the unique problems of a specific geographic area, and rejected the idea that numerical variances between political units, standing alone, are sufficient to make out an equal protection challenge in such cases.

*Dusch* involved an election plan for city council under which four members were elected at large, without regard to residence, and seven members, subject to a residency requirement, were elected by voters of the entire city. Each one of the seven members was required to live in one of the seven boroughs of

the city. The Supreme Court held that the election plan did not constitute invidious discrimination violative of the Equal Protection Clause even though the populations of the seven boroughs varied from less than 1,000 (i.e., 733) to nearly 30,000 (i.e., 29,048), and where the plan made no distinction based on race, creed, economic status or location.

In *Dallas County*, the Alabama State Legislature established a system for the election of members of the county commission of Dallas County, Alabama. The system provided for county-wide balloting for each of the four commission members but required that a member be elected from each of four residency districts. The Supreme Court held that the system was not unconstitutional even though the populations of the four districts varied widely. The Court determined that to establish the unconstitutionality of such an election plan, the challenge must be based on findings showing that the plan impermissibly dilutes the voting strength of an identifiable element of the voting population.

The Supreme Court also reiterated a basic teaching of representative government that it discussed previously in *Dusch* (387 US at 115) and *Fortson v Dorsey* (379 US 433, 438 [1965]), "that elected officials represent all of those who elect them, and not merely those who are their neighbors" (*Dallas County*, 421 US at 480). Applying this principle here, since the Fishers Island seat is subject to a town-wide vote, the individual elected to fill the seat represents the entire town, not just the residents of Fishers Island. Thus, Ross's contention that the residency requirement gives the people of Fishers Island a permanent advantage of greater representation is unavailing.

■ Based on the foregoing, we agree with the Appellate Division that the rational basis approach is the proper standard of review in the present case. There is no direct and appreciable impact on Southold's residents' right to vote. Nor has an identifiable class within the town been disenfranchised. To be sure, the Fishers Island residency requirement affects the right to vote, but only in an incidental and remote way. This statutory provision does not rise to a level which would require that it be subject to strict scrutiny.

■ We further conclude, as did the Appellate Division, that the Fishers Island residency requirement satisfies the rational basis test. In particular, the legislative history of the residency requirement, discussed supra, articulates several rational bases

for the residency requirement and retaining the dual town justice/town board member seat—e.g., the main purpose of the legislation is to ensure that the residents of Fishers Island are not deprived of meaningful representation in town government (*see* Sponsor's Mem, Bill Jacket, L 1977, ch 276).

Accordingly, the order of the Appellate Division, insofar as appealed from, should be affirmed, without costs.

Chief Judge LIPPMAN and Judges CIPARICK, GRAFFEO, READ, SMITH and PIGOTT concur.

Order, insofar as appealed from, affirmed, without costs.